### DENT v STATE OFFICE BUILDING COMM. et

Ohio Appeals, 2nd Dist, Franklin Co
No. 1996. Decided Nov 26, 1930

Wilson & Rector, Columbus, for Dent.
The Atty. General and S. W. Bennett, Columbus, for State Office Building Comm.

MIDDLETON, PJ, MAUCK and BLOSSER, JJ, (4th Dist), sitting.

MAUCK, J.

The contentions of the plaintiff are twofold, the first claim is that the Commission had no power to let a contract for the use of Georgia marble and this is a question of law. The second claim is that if the Commission had such power its discretion in exercising it was abused and this is a question of fact.

The law, (111 O. L. 475, and 113 O. L. 57) under which the Commission was appointed, authorized it to acquire a site located near the state Capitol and to erect thereon a state office building for which purpose $5,000,000.00 was appropriated. It was further provided that "In the construction of such building Ohio materials shall be used as far as practicable. The position of plaintiff is that the language just quoted means that if it is feasible or possible to construct any sort of an office building from Ohio material the Commission was bound to erect that sort of building and no other and that inasmuch as everyone knows that Ohio has brick, stone, etc., out of which an office building may be erected the Commission was without power to erect a building of such a character that outside material would be required. The law, however, does not so read. Within the limits of its appropriation the Commission was given full discretion as to the character of structure to be erected and generous latitude as to its location. The law did not indicate that the building should be either of the commercial type or of a monumental character. It left its size, form, location, type

and appearance to the judgment of the Commission. The legislature, therefore, not knowing what type of building would be determined upon and not knowing where the building would be located and, therefore, what architectural harmony would demand, prudently omitted to require that Ohio material should be used except to the extent that such use should be practicable. While the word "practicable," therefore, means "feasible" or "possible" it means feasible or possible taking into view the end to be reached. When the Commission determined that the building should be located on the Scioto River front and form a part of the civic center of Columbus and should be something more than a mere house with office rooms but should be of a monumental character in keeping with the dignity of the state and in uniformity with its present and prospective surroundings the practicable or feasible or possible materials were those that were practicable or possible in carrying out the plan determined upon. With this application of the term "practicable" we are well content with Judge Leach's disposition of the question of power.

In deciding as we do that it was competent for the Commission to take into consideration other features than that of mere utility in determining the type of building to be erected and that it was left to their discretion as to how far the structure would be monumental in character and appearance, we have practically disposed of the question of the good faith of the Commission in adopting Georgia marble as the facing material of the structure. Mr. Landes indicated that while he favored Ohio material when he thought that the building would be of a commercial character he, nevertheless, favored Georgia marble if the building was to partake of a monumental nature. Mr. Wiley, for reasons that were perfectly sound to him, never looked upon any Ohio material as practicable. Mr. Simpson took a similar view and his evidence shows that he had given extensive consideration to the state's needs and to the type of building material most appropriate for the particular location decided upon. While various factors seemed to have entered into the consideration of the matter on the part of Mr. Landes, Mr. Wiley, Mr. Simpson and Mr. Green, including the relative porosity of Ohio material and Georgia marble, the ease of cleaning the stone when occasion required it, the possibility of extending the building when necessary without giving to the extended building a patched appearance, the composite view of all four is perhaps best expressed in the testimony of Mr. Green, who said:

648

"In the selection of Georgia marble I was influenced by the fact that the new Ohio state office building would be located in an outstanding spot in the newly planned civic center of Columbus. The architectural design of the building showed that it would be impressive in appearance. I had in mind that this building should be considered as a most serviceable and accommodating building, and in addition it should be beautiful; a monumental building. I was firmly convinced that through the use of Georgia marble the building would meet all these requirements. Besides, the use of Georgia marble would add to the appearance, the beauty, architectural and otherwise, of what I considered would be a magnificent building. There was another phase of the construction and characteristics of this building that appealed to me very strongly. An analysis of the bids submitted by the contractors showed that all of them were much lower than the architect's estimate. That meant that we could use a superior material in the construction of this building and still be well within the limits of the legislative appropriation. There was no doubt in my mind regarding the difference in the appearance, in the beauty and character of Georgia marble, sandstone and Indiana limestone, all of which were considered. I was firmly convinced that a beautiful, monumental building could not be erected if sandstone were used. Furthermore it was my distinct understanding that as a member of the commission I was clearly authorized to use my discretion and my best judgment in the selection of the site and in the construction of the building and in the selection of the material to be used in the construction of the building. Another phase of the construction of the building appealed to me. I had in mind the erection of a building that would meet with the immediate requirements of the state government and of the state departments. But I had in mind more than that—the future needs of a growing state government. The present building will be erected in the center of the site, with ample provisions for the erection of wings on either end, adequate for the requirements of the state of Ohio for perhaps a half a century. It was my profound conviction that a building now erected, commodious, accommodating, adequate to meet the requirements of the state of Ohio, should have included within it an exterior material that would permit the addition of wings erected with a similar material that in later years would fit in with the beauty and architecture of the original building which we were planning to construct. In considering all these phases of construction connected with the erection of this new Ohio state office building, I gave conscientious, careful, and most serious consideration to the use of the material which was to be employed, to the design of the building, to its final construction, and to all these phases of the building construction to which I have just referred."

From all this we find that there is no evidence that the commission or any member of it abused the discretion confided in the commission to erect a building of a monumental character and that each and every member of the commission gave full deliberation and consideration to the respective merits of the various materials under consideration and that each and all of them merit nothing but praise for the disinterested and valuable service they have rendered the state without other compensation than the satisfaction of knowing that they have discharged the responsible duties of their position in a manner that entitles them to public commendation.

Thus supplemented, we renew our approval of the opinion of Judge Leach and order the dismissal of the petition and judgment for the defendants.

Decree for defendants.

MIDDLETON, PJ, and BLOSSER, J, concur.